**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 7, 2013**

# In the Court of Appeals of Georgia

A13A1287. ATLANTA BUSINESS VIDEO, L.L.C. v. FANTRACE, L.L.C. *et al.*

DILLARD, Judge.

In Georgia, a plaintiff who fails to appear for a scheduled calendar call risks having its civil action involuntarily dismissed without prejudice by the trial court for want of prosecution. And that is exactly what happened to Atlanta Business Video's ("ABV") lawsuit against FanTrace and its agent, Fereidoun Khalilian, when ABV's counsel failed to appear at the trial court's April 2012 "No Service/Default Calendar." ABV appeals, arguing that the trial court's dismissal of FanTrace was improper

because it diligently pursued its claims against that entity.[1] For the reasons noted *infra*, we affirm.

The record shows that in January 2011, Khalilian approached ABV about performing certain audio and video editing services for a new website called "FanTrace." In doing so, Khalilian represented to ABV that he was the CEO of FanTrace, which was owned by hip-hop recording artist Aliaune Thiam, who is more widely known as "Akon." Khalilian advised ABV that FanTrace was in the process of launching a web-based service in which customers could purchase "customized audio and video recordings of various celebrities to be used via a special Facebook application, which in turn could be synched and utilized with the customer's cell phone, laptop, iPad, and other hardware." He also explained that FanTrace was behind schedule because all of the employees of the production company it had previously contracted with to complete the project had been involved in a tragic car accident. As such, Khalilian emphasized the need for work to resume on this project immediately. And shortly thereafter, FanTrace and ABV agreed that ABV would perform the necessary work at the rate of $125 per hour. But after several weeks of

---

[1] ABV does not dispute the trial court's decision to dismiss its case against Khalilian for want of prosecution due to the failure of its counsel to appear at the trial court's April 2012 No Service/Default Calendar.

2

working together, the relationship between FanTrace and ABV deteriorated, ultimately resulting in this lawsuit.

On appeal, we are not asked to reach the merits of ABV's claims against FanTrace, but are instead tasked with determining whether the trial court erred in dismissing those claims pursuant to OCGA § 9-11-41 (b), which provides for an involuntary dismissal without prejudice when there has been a "failure of the plaintiff to prosecute or to comply with this chapter or any order of court . . . ."[2] An involuntary dismissal without prejudice for failure of the plaintiff to prosecute "does

---

[2] *See also Peachtree Winfrey Assoc. v. Gwinnett Cty Bd. of Tax Assessors*, 197 Ga. App. 226, 226 (398 SE2d 253) (1990) (citing statute and supporting case law); Uniform Superior Court Rule 14 (providing that "[o]n its own motion or upon the motion of the opposite party, the court may dismiss without prejudice any civil action . . . upon the failure to properly respond to the call of the action for trial or other proceeding . . . ."); *see also* OCGA § 15-1-3 (3) (providing that every court has the power to "compel obedience to its judgments, orders, and process and to the orders of a judge out of court in an action or proceeding therein"); OCGA § 15-1-3 (4) (providing that every court has the power to "control, in the furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto"). *Cf. Pennington v. Pennington*, 291 Ga. 165, 166 (728 SE2d 230) (2012) ("A trial court may strike a party's pleadings as a proper sanction for wilful refusal to participate in the proceedings pursuant to a court's inherent power to efficiently administer the cases upon its docket, as well as its power to compel obedience to its orders and control the conduct of everyone connected with a judicial proceeding before that court.").

not operate as an adjudication upon the merits,"[3] and such a dismissal by the trial court for failure to appear "is discretionary . . . and is not subject to review by this [C]ourt in the absence of an abuse of that discretion."[4] Indeed, as we have previously explained, we will not "substitute our judgment for that of the trial court when there is no *obvious or apparent* abuse of discretion by the court in what clearly is a matter of discretion."[5] With these guiding principles in mind, we turn now to ABV's enumeration of error.

Specifically, ABV argues that the dismissal of its claim against Fantrace constitutes an abuse of the trial court's discretion because (1) counsel for ABV "does not subscribe to the Fulton County Daily Report and . . . he did not receive any other written notice of the hearing [i.e., the court's "No Service/Default Calendar"]," and (2) it "diligently pursued its claims against Fantrace." We disagree.

---

[3] OCGA § 9-11-41 (b).

[4] *Peachtree Winfrey Assoc.*, 197 Ga. App. at 226; *see also Jimenez v. Chicago Title Ins. Co.*, 310 Ga. App. 9, 14 (3) (a) (712 SE2d 531) (2011); *Floyd v. Logisticare, Inc.*, 255 Ga. App. 702, 702-03 (1) (566 SE2d 423) (2002).

[5] *Peachtree Winfrey Assoc.*, 197 Ga. App. at 226 (citation and punctuation omitted) (emphasis supplied).

4

First, the trial court's order explicitly rebuts ABV's unsubstantiated assertion that it failed to receive written notice of the April 2012 proceeding,[6] noting that such notice was "mailed on March 14, 2012[,] informing all parties of the 10:30 a.m. Hearing," and that "[p]laintiff failed to appear and communicate with the Court[.]" We take the trial court at its word.[7]

And even if ABV failed to *receive* written notification of the April 2012 "No Service/Default Calendar," it is ultimately of no consequence. ABV does not dispute Fantrace's assertions that (1) at the December 2011 calendar, the trial court granted ABV's request for an additional 90 days to accomplish service of process on Khalilian; (2) the trial court then placed this case on its March 19, 2012 "No

---

[6] As we have previously and repeatedly explained, unsworn, self-serving statements made in an appellate brief are not evidence and will not be considered by this Court. *See Williams v. State*, 293 Ga. App. 193, 200-01 (4) (666 SE2d 703) (2008); *Palmer & Cay of Ga., Inc. v. Lockton Cos., Inc.*, 284 Ga. App. 196, 198 n. 1 (643 SE2d 746) (2007).

[7] *See Porter v. Tissenbaum*, 247 Ga. App. 816, 818 (3) (545 SE2d 372) (2001) (holding that "trial court was authorized to draw adverse inferences from the uncontradicted testimony of the clerk that she timely sent a copy of the trial calendar with adequate postage to the return address defendants gave with their answer"); *see also Hammonds v. Sherman*, 277 Ga. App. 498, 498-99 (627 SE2d 110) (2006) (noting that "[t]here is a presumption that the clerk gave proper notice of the calendar call, and the burden is on [the plaintiff] to show that she was not notified," and that "[i]n general, publication of a court calendar in the county's legal organ of record is sufficient notice to the parties of a pending action that they must appear").

5

Service/Default Calendar"; (3) ABV's counsel attended the March 2012 calendar; and (4) at the March 2012 calendar, the trial court granted ABV an additional 30 days to perfect service on Khalilian, warning that no additional extensions would be granted.

It is in the foregoing context that we would otherwise consider ABV's claim that it had no notice of the April 2012 calendar. And even if ABV's counsel had filed an affidavit with the trial court averring that he did not receive written notification of the April 2012 calendar, it nevertheless strains credulity to suggest that he was not already on notice of this proceeding after the March 2012 calendar—during which the trial court granted him an additional 30 days to perfect service on Khalilian and advised him that no further extensions would be granted. The trial court placed this case on the "No Service/Default Calendar" immediately following its 90-day extension of time to perfect service on Khalilian (*i.e.*, on the March calendar), and there is nothing in the record indicating that ABV had any reason to believe that this matter would not be handled identically as to the second and *final* extension (and thus placed on the April calendar). Finally, as FanTrace aptly notes, the trial court's docket, including dates and times of any calendar calls or hearings, is published on the clerk of court's website. Suffice it to say, it is a fundamental principle of Georgia law that counsel has a duty to keep himself informed as to the progress of the cases

6

he handles in a particular court, "so that [he] may take whatever actions may be necessary to protect the interests of [his] clients."[8]

As for ABV's second argument, we fail to see the relevance of ABV's diligence as to its claims against Fantrace leading up to the April calendar. We have already concluded that ABV knew or should have known that this matter would be placed on the trial court's "No Service/Default Calendar" for April to make a final determination as to its efforts to perfect service on Khalilian, and ABV cites no authority suggesting that the trial court was in any way precluded from dismissing the *entire* action without prejudice as a result of its failure to appear at that proceeding.[9] To the contrary, our prior case law in this area has shown extraordinary deference to trial courts that have chosen to dismiss a civil action as a result of a party's failure to

---

[8] *Hipple v. Simpson Paper Co.*, 234 Ga. App. 516, 517 (1) (507 SE2d 156) (1998) (citation and punctuation omitted); *see also Venable v. Block*, 138 Ga. App. 215, 218 (4) (225 SE2d 755) (1976).

[9] ABV's reliance on *Broadwater v. City of Doraville*, 184 Ga. App. 886 (363 SE2d 316) (1987) is misplaced, as the reasoning of that opinion concerns the interpretive interplay between § 9-11-41(b) and Uniform Superior Court Rules 8.4 and 14, and this case does not involve a "published trial calendar." *See Broadwater*, 184 Ga. App. at 888 (2). Moreover, both the December 2011 and March 2012 "Notice of Hearing No Service/Default Calendar" explicitly provided that "[f]ailure to either appear at the calendar call or file proof that any issues noted above have been resolved *may result in dismissal of the action* or entry of default judgment."

7

appear at a proceeding, calendar call, or the like.[10] In this respect, ABV's reliance on the procedurally unique decision of *Wallace v. Laughlin*[11] is inapt. In *Wallace*, we reversed the trial court's involuntarily dismissal of a petition for modification of child custody because of "miscommunication and well-found misunderstanding, compounded by the incapacitating illness of the trial judge familiar with the case," and "[p]articularly in so important a case as this, where the rights and well-being of the parties' children are at stake . . . ."[12] But this unusual confluence of events bears no relation to the facts of the case *sub judice*, and as such *Wallace* is clearly inapplicable.

---

[10] *See Ector v. Unison Ins. Co.*, 228 Ga. App. 520, 521 (3) (492 SE2d 287) (1997) (affirming dismissal of plaintiff's suit without prejudice "for failure to appear at the calendar call," even though "the circumstances of this case understandably gave rise to some confusion" because ultimately "it was plaintiff's responsibility to appear at the call or contact the court to clarify the status of the case in the absence of a continuation order."); *see also Kraft, Inc. v. Abad*, 262 Ga. 336, 336 (417 SE2d 317) (1992) ("OCGA § 9-11-41(b) and Superior Court Rule 14 both contain permissive language. Under either provision the court may dismiss an action without prejudice if the plaintiff fails to appear at the call of the case.").

[11] 217 Ga. App. 444 (459 SE2d 556) (1995).

[12] *Id.* at 445 (2)

Likewise unconvincing is ABV's reliance on this Court's decision in *Cohutta Mills, Inc. v. Bunch*,[13] where we noted that a dismissal "should not be based solely on the absence of a party, but should be taken only after a full consideration of all circumstances."[14] But in making this pronouncement of law, we relied upon our Supreme Court's decision in *Spyropoulos v. Linard Estate*;[15] and as we later explained in *Ector v. Unison Insurance Co.*,[16] this Court's line of cases relying on *Spyropoulos* all "involved orders dismissing cases *with* prejudice (entered prior to November 1982, the effective date of an amendment to OCGA § 9-11-41 providing that all dismissals for failure to appear would be *without* prejudice, and therefore do not control here."[17] As such, *Cohutta* is likewise inapplicable.

For all of the foregoing reasons, the trial court's dismissal of ABV's entire lawsuit without prejudice did not constitute an abuse of discretion and, thus, is affirmed.

---

[13] 166 Ga. App. 395 (304 SE2d 431) (1983).

[14] *Id.* at 396 (2).

[15] 243 Ga. 518 (255 SE2d 40) (1979).

[16] 228 Ga. App. 520 (492 SE2d 287) (1997).

[17] *Id.* at 521 (3).

9

*Judgment affirmed. Andrews, P. J., and McMillian, J., concur.*